**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation; INSTAGRAM, LLC, a Delaware limited liability company; and WHATSAPP INC., a Delaware corporation;<br><br>Plaintiffs,<br><br>v.<br><br>facebook-verify-inc.com;<br>httpswwwfacebook.com;<br>myfacebooklogin.net;<br>rackearfacebook.com;<br>curtindoimagensnofacebook.com;<br>mtouchfacebook.com;<br>instagramfrenzy.com;<br>instagramhjack.com;<br>espiarwhatsappwep.com;<br>parapreciosescribenosporwhatsapp.com;<br>videocall-whatsapp.com;<br>whatsappcolor.com;<br><br>Defendants. | CIVIL CASE NO. _____<br><br><br><br>**COMPLAINT FOR CYBERSQUATTING**<br>(*IN REM* **RELIEF**)<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Facebook, Inc. ("Facebook"), Instagram, LLC ("Instagram"), and WhatsApp Inc. ("WhatsApp") (collectively, "Plaintiffs") allege as follows:

**NATURE OF THE CASE**

This is an action *in rem* against the infringing domain names <facebook-verify-inc.com>, <httpswwwfacebook.com>, <myfacebooklogin.net>, <rackearfacebook.com>, <curtindoimagensnofacebook.com>, <mtouchfacebook.com>, <instagramfrenzy.com>, <instagramhjack.com>, <espiarwhatsappwep.com>, <parapreciosescribenosporwhatsapp.com>, <videocall-whatsapp.com>, and <whatsappcolor.com> (collectively hereafter "Defendant Domain Names") based on the Anticybersquatting Consumer Protection Act ("ACPA"), 15

1  COMPLAINT FOR CYBERSQUATTING
(*IN REM* RELIEF)

U.S.C. § 1125(d). The Defendant Domain Names have been registered, trafficked in and/or used with a bad faith intent to profit from Plaintiffs' trademarks in violation of the ACPA. Designed to impersonate Plaintiffs, the Defendant Domain Names are used to divert unsuspecting consumers to commercial websites unaffiliated with Plaintiffs, and on information and belief, to websites that distribute viruses and malware, while potentially exposing the consumer to phishing scams, identity theft, or other types of fraud. Plaintiffs seek injunctive relief and the transfer of the Defendant Domain Names to them.

## JURISDICTION, VENUE AND JOINDER

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). Plaintiffs are not able to obtain *in personam* jurisdiction over the registrant who would have been a defendant or, through due diligence, were not able to find a person who would have been a defendant because the identity(ies) of the registrant's authorized licensee(s) of the Defendant Domain Names are concealed by a proxy service. 15 U.S.C. § 1125(d)(2)(A)(ii). Additionally, under 15 U.S.C. § 1125(d)(2)(C), the Defendant Domain Names are deemed to have their situs in this judicial district because VeriSign Inc. – the <.com> and <.net> registry – is located in Reston, Virginia.

3. Upon information and belief, Compsys Domain Solutions Private Limited ("Compsys"), a business entity located in India, provides a domain registration proxy service. Compsys registers a domain name in its own name and, as the registrant and owner of the domain name, licenses the domain name to a person for trafficking and use.

4. Plaintiffs, through due diligence, were unable to identify the authorized licensee(s) of the Defendant Domain Names registered through Compsys. In fact, Compsys, as well as the

Case 1:20-cv-00639-RDA-IDD   Document 1   Filed 06/08/20   Page 3 of 18 PageID# 3

registrars Tirupati Domains and Hosting Pvt. Ltd. ("Tirupati") and PDR Ltd. d/b/a Public Domain Registry.com ("PDR"), have refused to disclose the identities of the authorized licensee(s) of the Defendant Domain Names in response to Plaintiffs' requests.

5. Upon information and belief, the authorized licensee(s) of the Defendant Domain Names is/are the same person or entity and/or are under the control of the same person or entity, as evidenced by the similarity of the Defendant Domain Names, the use of the same registrars, similar pay-per-click content displayed on the directory sites, and the registrations occurred within close time periods. Moreover, all Defendant Domain Names share the same IP address.

6. Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa), Plaintiffs have given notice of the violations of their rights and will give notice of their intent to proceed *in rem* to the postal and e-mail addresses set forth in the WHOIS registration records for the Defendant Domain Names.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 1125(d)(2) because the property – the Defendant Domain Names – is located in the Eastern District of Virginia and the entity that maintains the registrations for the Defendant Domain Names – VeriSign Inc. – is located in the Eastern District of Virginia.

8. Joinder of the Defendant Domain Names is proper under Fed. R. Civ. P. 20(a)(2) in that the *in rem* cybersquatting claim set forth herein arises out of the same series of transactions and the same questions of law that are common to all of the Defendant Domain Names.

**PARTIES**

9. Plaintiff Facebook is a Delaware corporation with its principal place of business located at 1601 Willow Road, Menlo Park, California 94025.

10. Plaintiff Instagram is a Delaware limited liability company with its principal place of business located at 1601 Willow Road, Menlo Park, California 94025.

11. Plaintiff WhatsApp is a Delaware corporation with its principal place of business

at 1601 Willow Road, Menlo Park, California 94025.

12. Facebook is the ultimate parent company of Instagram and WhatsApp.

13. <facebook-verify-inc.com> is an internet domain name registered on November 21, 2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 1.**

14. <httpswwwfacebook.com> is an internet domain name registered on November 16, 2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 2.**

15. <myfacebooklogin.net> is an internet domain name registered on October 27, 2017, using the registrar PDR. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 3.**

16. <rackearfacebook.com> is an internet domain name registered on February 1, 2018, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 4.**

17. <curtindoimagensnofacebook.com> is an internet domain name registered on December 1, 2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 5.**

18. <mtouchfacebook.com> is an internet domain name registered on November 21, 2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name registration is attached as **Exhibit 6.**

19. <instagramfrenzy.com> is an internet domain name registered on February 26, 2018, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 7.**

20. <instagramhjack.com> is an internet domain name registered on November 9,

2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 8.**

21. <espiarwhatsappwep.com> is an internet domain name registered on February 26, 2018, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 9.**

22. <parapreciosescribenosporwhatsapp.com> is an internet domain name registered on January 23, 2018, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 10.**

23. <videocall-whatsapp.com> is an internet domain name registered on February 1, 2018, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 11.**

24. <whatsappcolor.com> is an internet domain name registered on November 16, 2017, using the registrar Tirupati. A true and accurate copy of the WHOIS registration record for this domain name is attached as **Exhibit 12.**

25. All of the Defendant Domain Names are configured to use the same IP address, namely, 199.191.50.142. This IP address is used by a server in the British Virgin Islands.

26. All of the Defendant Domain Names have been registered with the use of a domain registration proxy service, in this case Compsys, to block access to the authorized licensee(s)'s identity and contact information.

27. Upon information and belief, rather than acting merely as a domain registration proxy service, which typically discloses the identity of the authorized licensee(s) once an administrative domain name dispute is instituted, Compsys does not disclose the identity of its authorized licensee(s) as part of the dispute. As a result, the identities of the authorized licensee(s) are never publicly revealed. For example, a recent World Intellectual Property Organization

("WIPO") panel decision in a Uniform Domain Name Dispute Resolution Policy ("UDRP") dispute, *Unilever N.V. v. Compsys Domain, Compsys Domain Solutions Private Limited*, Case No. D2018-2292 (WIPO Nov. 20, 2018), identifies at least seven (7) other WIPO UDRP disputes in which Compsys was a named Respondent. Accordingly, the Panel found that Compsys had engaged in a bad faith pattern of domain name registration and ordered the domain name registration transferred to the trademark owner.

28. Upon information and belief, Compsys is currently the listed registrant of dozens of other domain names that are identical or confusingly similar to the famous trademarks of others.[1]

29. Despite registering dozens of domain names over the last few years, Plaintiffs are informed and believe that Compsys' corporate status has been inactive since at least 2012.

30. Upon information and belief, Tirupati has breached its Registration Accreditation Agreement ("RAA") with the Internet Corporation for Assigned Names and Numbers ("ICANN") on at least three (3) occasions for failing to comply with mandatory registration data submission requirements and procedures for publishing abuse reports, and failing to comply with the UDRP.[2]

## GENERAL ALLEGATIONS

**Facebook's Services and Marks**

31. Facebook was founded in 2004, the same year it launched the social media platform, Facebook, currently available on the website located at <facebook.com> and the Facebook mobile application.

32. Amongst other products and services, Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with

---

[1] https://domainbigdata.com/nj/suIbDmiBBc08--phT9SV4Zx0gxmU8cAJXx_47iiC8eiafIlG9fIVBMFooIqmD22t (last accessed May 28, 2020).
[2] https://www.icann.org/compliance/notices (last accessed May 28, 2020).

each other on their personal computers and mobile devices.

33. Facebook owns the exclusive rights to numerous trademarks and service marks to provide its online services, including the distinctive FACEBOOK wordmark and stylized mark, having used the marks in connection with its services since at least as early as 2004.

34. In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks including, but not limited to:

   a. United States Registration Number 3,122,052; and

   b. United States Registration Number 3,881,770.

True and accurate copies of these registration certificates are attached as **Exhibits 13 and 14.** Facebook's common law and registered trademarks are collectively referred to as the "Facebook Marks."

35. Moreover, pursuant to Sections 15 and 33(b) of the Trademark Act (15 U.S.C. §§ 1065 and 1115 (b)), Facebook's federal trademark registrations for FACEBOOK (Reg. No. 3,881,770) and FACEBOOK (Reg. No. 3,122,052) have become incontestable through five years of consecutive use from the date of registration.  In addition, Facebook filed Section 15 affidavits in the United States Patent and Trademark Office confirming that the registrations are incontestable.

36. Facebook's use of the Facebook Marks in interstate commerce has been extensive, continuous, and substantially exclusive.  Facebook has made, and continues to make, a substantial investment of time, effort and expense in the promotion of Facebook and the Facebook Marks.

37. As a result of Facebook's efforts and use, the Facebook Marks are famous (and have been famous since at least as early as 2011) as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by Facebook.

38. Facebook is available in over one hundred languages and has over two billion active users.

39. Facebook is consistently ranked as one of the top 10 most visited websites and consistently ranks as one of the most downloaded applications for mobile devices.

40. According to App Annie, between 2010 and 2019, Facebook was the number one downloaded app worldwide.

41. According to information company Alexa, <facebook.com> is the fourth most visited website in the United States.

**Instagram's Services and Marks**

42. Instagram offers a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers online.

43. Instagram owns the exclusive rights to the distinctive INSTAGRAM wordmark and stylized mark, having used the marks in connection with its goods and services since as early as 2010.

44. In addition to extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks, including, but not limited to:

    a. United States Registration Number 4,795,634;

    b. United States Registration Number 4,146,057;

    c. United States Registration Number 4,756,754;

    d. United States Registration Number 5,566,030;

    e. United States Registration Number 4,856,047;

    f. United States Registration Number 4,822,600;

    g. United States Registration Number 4,827,509;

  h.  United States Registration Number 4,863,594;

  i.  United States Registration Number 4,863,595;

  j.  United States Registration Number 5,019,151; and

  k.  United States Registration Number 5,869,731.

True and accurate copies of these registration certificates are attached as **Exhibits 15 through 25**. Instagram's common law and registered trademarks are collectively referred to as the "Instagram Marks."

  45.  Moreover, pursuant to Sections 15 and 33(b) of the Trademark Act (15 U.S.C. §§ 1065 and 1115 (b)), Instagram's federal trademark registration for INSTAGRAM (Reg. No. 4,146,057) has become incontestable through five years of consecutive use from the date of registration. In addition, Instagram filed a Section 15 affidavit in the United States Patent and Trademark Office confirming that the registration is incontestable.

  46.  Instagram's use of the Instagram Marks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Marks.

  47.  As a result of Instagram's efforts and use, the Instagram Marks are famous (and have been famous since at least as early as 2014) as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by Instagram.

  48.  More than 1 billion people use Instagram making it one of the world's most popular mobile applications.

  49.  Instagram is available in over 30 languages, and it is ranked as one of the most visited websites in the world.

  50.  According to App Annie, between 2010 and 2019, Instagram was the fourth most

downloaded app worldwide.

51. According to information company Alexa, <instagram.com> is the 18th most visited website in the United States.

**WhatsApp's Services and Marks**

52. WhatsApp offers simple, secure, reliable messaging and calling provided for mobile devices globally and through desktop computers. WhatsApp users may access WhatsApp's services via app stores or its website located at <whatsapp.com>.

53. WhatsApp owns the exclusive rights to several trademark and service marks including the distinctive WHATSAPP mark, having used the mark in connection with its goods and services since at least as early as 2009.

54. In addition to its extensive common law rights, WhatsApp owns numerous United States registrations for the WHATSAPP mark including, but not limited to:

    a. United States Registration Number 3,939,463;

    b. United States Registration Number 4,083,272;

    c. United States Registration Number 5,492,738; and

    d. United States Registration Number 5,520,108.

True and accurate copies of these registration certificates are attached as **Exhibits 26 through 29**. WhatsApp's common law and registered trademarks are collectively referred to as the "WhatsApp Marks."

55. Moreover, pursuant to Sections 15 and 33(b) of the Trademark Act (15 U.S.C. §§ 1065 and 1115 (b)), WhatsApp's federal trademark registrations for WHATSAPP (Reg. No. 4,083,272) and WHATSAPP (Reg. No. 3,939,463) have become incontestable through five years of consecutive use from the date of registration. In addition, WhatsApp filed Section 15 affidavits in the United States Patent and Trademark Office confirming that the registered marks are

incontestable.

56. WhatsApp's use of the WhatsApp Marks in interstate commerce has been extensive, continuous, and substantially exclusive. WhatsApp has made, and continues to make, a substantial investment of time, effort and expense in the promotion of WhatsApp and the WhatsApp Marks.

57. Almost 2 billion people in over 180 countries use WhatsApp making it one of the world's most popular messaging applications.

58. According to App Annie, between 2010 and 2019, the WhatsApp Messenger was ranked third in downloaded apps worldwide.

59. Collectively, the Facebook Marks, Instagram Marks, and WhatsApp Marks constitute "FB Intellectual Property" for purposes of this Complaint.

**Unlawful Registration and Use of Defendant Domain Names**

60. Plaintiffs own the exclusive right to use and control their FB Intellectual Property in connection with goods and services identical or related to those for which the FB Intellectual Property is used including, but not limited to, providing and hosting online web facilities.

61. Each of the Defendant Domain Names is identical or confusingly similar to Plaintiffs' FB Intellectual Property. Each of the Defendant Domain Names combines Plaintiffs' FB Intellectual Property with generic, descriptive or other non-distinctive words that are insufficient to distinguish the Defendant Domain Names from Plaintiffs' marks.

62. The <facebook-verify-inc.com> domain name wholly incorporates the Facebook Marks combined with the words "verify inc," which, on its face, misleads consumers into the mistaken belief the domain name registration is associated with verification of a Facebook account, and is otherwise insufficient to materially distinguish it from the Facebook Marks.

63. The <httpswwwfacebook.com> domain name wholly incorporates the Facebook

Marks combined with the letters "httpswww," which is "typosquatting" or an attempt to capitalize upon typographical errors of a user, primarily users who inadvertently miss typing the periods between https and www and Facebook, and is otherwise insufficient to materially distinguish it from the Facebook Marks.

64. The <myfacebooklogin.net> domain name wholly incorporates the Facebook Marks combined with the words "my login," which, on its face, misleads consumers into the mistaken belief the domain name registration is associated with access to a Facebook account, and is otherwise insufficient to materially distinguish it from the Facebook Marks.

65. The <rackearfacebook.com> domain name wholly incorporates the Facebook Marks combined with the word "rackear," which is an alternative spelling of "hackear" – the word for "hacker" in Spanish – and is otherwise insufficient to materially distinguish it from the Facebook Marks.

66. The <curtindoimagensnofacebook.com> domain name wholly incorporates the Facebook Marks combined with the words "curtindo imagens no Facebook," a Portuguese phrase meaning "enjoying images on Facebook," an action particularly associated with Plaintiff's services, and is otherwise insufficient to materially distinguish it from the Facebook Marks.

67. The <mtouchfacebook.com> domain name wholly incorporates the Facebook Marks combined with the term "mtouch," which is "typosquatting" or an attempt to capitalize upon typographical errors of a user, primarily users who inadvertently miss typing the period between mtouch and Facebook when attempting to access the "mtouch" version of Facebook (which is available in both the United States and internationally), and is otherwise insufficient to materially distinguish it from the Facebook Marks.

68. The <instagramfrenzy.com> domain name wholly incorporates the Instagram Marks combined with the word "frenzy," and is otherwise insufficient to materially distinguish it

from the Instagram Marks.

69. The <instagramhjack.com> domain name wholly incorporates the Instagram Marks combined with the word "jack" and letter "h," which is "typosquatting" of the word "hack" or "hijack," designed to catch a typographical error of either typing "hack" because "j" is next to the "h" on the keyboard or missing the "i" in "hijack," and is otherwise insufficient to materially distinguish it from the Instagram Marks.

70. The <espiarwhatsappwep.com> domain name wholly incorporates the WhatsApp Marks combined with the word "espiar" which is Spanish for the word "spy," and the word "wep," which appears to be capitalizing on a typographical error in attempting to type "web," and is otherwise insufficient to materially distinguish it from the WhatsApp Marks.

71. The <parapreciosescribenosporwhatsapp.com> domain name wholly incorporates the WhatsApp Marks combined with the words "para precios escribenos por," which, translated from Spanish means "for prices write us," is an attempt to mislead consumers into the mistaken belief the domain name registration is associated with WhatsApp pricing, and is otherwise insufficient to materially distinguish it from the WhatsApp Marks.

72. The <videocall-whatsapp.com> domain name wholly incorporates the WhatsApp Marks combined with the word "videocall," which is a service that is offered through the WhatsApp application and is otherwise insufficient to materially distinguish it from the WhatsApp Marks.

73. The <whatsappcolor.com> domain name wholly incorporates the WhatsApp Marks combined with the word "color" and is otherwise insufficient to materially distinguish it from the WhatsApp Marks.

74. Upon information and belief, at least two of the Defendant Domain Names, <myfacebooklogin.net> and <curtindoimagensnofacebook.com>, are used to host websites that

attempt to install dangerous viruses and/or malware on consumers' computers. True and accurate screen captures of the resulting websites are attached hereto as **Exhibits 30 and 31.**

75. The <facebook-verify-inc.com>, <rackearfacebook.com>, <httpswwwfacebook.com>, <mtouchfacebook.com>, <instagramfrenzy.com>, <instagramhjack.com>, <espiarwhatsappwep.com>, <parapreciosescribenosporwhatsapp.com>, <videocall-whatsapp.com>, and <whatsappcolor.com> Defendant Domain Names misdirect consumers to highly similar directory sites featuring links to third party advertisements that, upon information and belief, provide "click bait" or are otherwise used to increase "hits" and/or monetize the sites linked to the Defendant Domain Names. True and accurate copies of screen shots of each of these directory sites are attached hereto as **Exhibits 32 through 41.**

76. The Facebook Marks and Instagram Marks, which are incorporated into the Defendant Domain Names <facebook-verify-inc.com>, <httpswwwfacebook.com>, <myfacebooklogin.net>, <rackearfacebook.com>, <curtindoimagensnofacebook.com>, <mtouchfacebook.com>, <instagramfrenzy.com>, <instagramhjack.com>, are distinctive and famous and were distinctive and famous at the time the Defendant Domain Names were registered.

77. The WhatsApp Marks, which are incorporated into the Defendant Domain Names <espiarwhatsappwep.com>, <parapreciosescribenosporwhatsapp.com>, <videocall-whatsapp.com>, and <whatsappcolor.com>, are distinctive and were distinctive at the time the Defendant Domain Names were registered.

78. Upon information and belief, the person(s) who registered, trafficked in, or used the Defendant Domain Names did not believe or have reasonable grounds to believe that the use of the Defendant Domain Names was a fair use or otherwise lawful.

79. Indeed, in each of the Defendant Domain Names, the FB Intellectual Property

remains the distinctive and dominant portion of the domain names; thus, as a whole, the Defendant Domain Names create the commercial impression of being connected with Plaintiffs.

80. Despite Plaintiffs' requests for disclosure, Compsys continues to conceal the identity(ies) of the authorized licensee(s) of the Defendant Domain Names through its proxy service.

**COUNT ONE**

**(Cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d))**

81. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

82. Plaintiffs own numerous federal registrations in the FB Intellectual Property and have continuously used the FB Intellectual Property.

83. The FB Intellectual Property was distinctive and/or famous at the time of registration of the Defendant Domain Names.

84. The Defendant Domain Names are identical or confusingly similar to and/or dilutive of the FB Intellectual Property.

85. The Defendant Domain Names impair the distinctiveness of the FB Intellectual Property and weaken the connection in consumers' minds between Plaintiffs and the FB Intellectual Property.

86. Upon information and belief, the Defendant Domain Names were registered, trafficked in, or used with a bad faith intent to profit from the FB Intellectual Property.

87. Upon information and belief, the person who registered, trafficked in, or used the Defendant Domain Names has no trademark or other intellectual property rights in the Defendant Domain Names.

88. Upon information and belief, the person who registered, trafficked in, or used the

Defendant Domain Names made no prior use of the Defendant Domain Names in connection with the *bona fide* offering of any goods or services.

89.     Upon information and belief, the person who registered, trafficked in, or used the Defendant Domain Names made no *bona fide* non-commercial or fair use of the Defendant Domain Names in a site accessible under the Defendant Domain Names.

90.     Upon information and belief, the Defendant Domain Names were registered, trafficked in, or used with an intent to divert Plaintiffs' consumers to a site(s) accessible through the Defendant Domain Names that could harm the goodwill represented by the FB Intellectual Property, either for commercial gain or with the intent to tarnish or disparage the FB Intellectual Property, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site(s) accessible through the Defendant Domain Names.

91.     The Defendant Domain Names appear in the same channels of trade or in the same manner as Plaintiffs' goods and services.

92.     Upon information and belief, the person who registered, trafficked in, or used the Defendant Domain Names registered multiple domain names that the person knew were identical or confusingly similar to the trademarks of others at the time of registration.

93.     Plaintiffs are not affiliated or connected with the Defendant Domain Names nor have they endorsed or sponsored them.

94.     Because of the likelihood of confusion between Plaintiffs and the Defendant Domain Names, any fault found with the Defendant Domain Names and/or the Defendant Domain Names' goods and services will negatively impact the reputation and goodwill Plaintiffs have created in connection with the FB Intellectual Property.

95.     As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

96. Plaintiffs' remedy at law is not adequate to compensate for the injuries inflicted on Plaintiffs. Accordingly, Plaintiffs are entitled to an order transferring the Defendant Domain Names to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court grant judgment as follows:

A. A declaration that each of the Defendant Domain Names is a defendant *in rem*;

B. A declaration that the <facebook-verify-inc.com>, <httpswwwfacebook.com>, <myfacebooklogin.net>, <rackearfacebook.com>, <curtindoimagensnofacebook.com>, and <mtouchfacebook.com> domain names violate Facebook's rights in its Facebook Marks under 15 U.S.C. § 1125(d);

C. A declaration that the <instagramfrenzy.com> and <instagramhjack.com> domain names violate Instagram's rights in its Instagram Marks under 15 U.S.C. § 1125(d);

D. A declaration that the <espiarwhatsappwep.com>, <parapreciosescribenosporwhatsapp.com>, <videocall-whatsapp.com>, and <whatsappcolor.com> domain names violate WhatsApp's rights in its WhatsApp Marks under 15 U.S.C. § 1125(d);

E. An order requiring VeriSign to place the Defendant Domain Names on registrar lock and hold for the pendency of the litigation;

F. An order requiring VeriSign to transfer the <facebook-verify-inc.com>, <httpswwwfacebook.com>, <myfacebooklogin.net>, <rackearfacebook.com>, <curtindoimagensnofacebook.com>, and <mtouchfacebook.com> domain names to Facebook from the current domain name registrar to Facebook's domain name registrar of choice, and that that registrar transfer ownership of each of these domain names to Facebook;

G. An order requiring VeriSign to transfer the <instagramfrenzy.com> and

<instagramhjack.com> domain names to Instagram from the current domain name registrar to Instagram's domain name registrar of choice, and that that registrar transfer ownership of each of these domain names to Instagram;

H. An order requiring VeriSign to transfer the <espiarwhatsappwep.com>, <parapreciosescribenosporwhatsapp.com>, <videocall-whatsapp.com>, and <whatsappcolor.com> domain names to WhatsApp from the current domain name registrar to WhatsApp's domain name registrar of choice, and that that registrar transfer ownership of each of these domain names to WhatsApp; and

I. An award to Plaintiffs of such other and further relief as the Court may deem just and proper.

DATED this 8th day of June, 2020.

**DICKINSON WRIGHT PLLC**

/s/
NICOLE M. MEYER (VA Bar No. 43029)
H. JONATHAN REDWAY (VA Bar No. 42189)
International Square Bldg.
1825 Eye St. N.W., Suite 900
Washington, D.C. 20006
Tel: (202) 659-6924
Tel: (202) 659-6946
Fax: (844) 670-6009
Email:  nmeyer@dickinsonwright.com
E-mail: jredway@dickinsonwright.com

JOHN L. KRIEGER (*pro hac vice to be submitted*)
3883 Howard Hughes Pkwy., Suite 800
Las Vegas, NV  89169
Tel:  (702) 550-4400
Fax:  (844) 670-6009
Email:  jkrieger@dickinsonwright.com

*Attorneys for Plaintiffs Facebook, Inc., Instagram, LLC and WhatsApp Inc.*